Davis, J.,
delivered the opinion of the court:
In 1873 the defendants, as party of the first part, and the claimants, as party of the second part, entered into a written contract for the manufacture of ordinary postage-stamps by the latter and their sale and delivery to the former. The material clauses of this contract are the following :
“ The said party of the second part agrees—
“ 1st. To furnish and deliver all the adhesive postage-stamps which may be required by the Post-Office Department for a term of four (4) years, commencing on the first day of May, one thousand eight hundred and seventy-three (1873).
* # *- * * « *
“ 4th. To securely pack all stamps to be transmitted by sea-routes in hermetically-sealed tin cases, wrapped in strong manilla paper; all others to be. either packed in strong binder’s-board boxes, bound on the edges and corners with muslin, and enveloped in two thicknesses of strong manilla paper, or inclosed in strong manilla envelopes, as the quantity to be transmitted may require; all packages to be so inclosed as to enable the agent -of the department to officially seal them.
“ 5th. To deliver the stamps in separate packages, as above provided for, at the post-office in the city of New York, or in such quantities at the Post-Office Department, Washington, D. 0. (each denomination being kept separate), as the Postmaster-General may direct.
*76 “ Gtli. To furnish labels and direct tlie same for each package in accordance witli tlie daily lists furnished by the agent of the department, together with all other blanks required to be inclosed with the stamps; also, all blanks for daily, weekly, monthly, and quarterly returns, relating to the number and denominations of stamps furnished and stock on hand and in process of manufacture.
* *:<: * & # # #
“ 10th. ■ To furnish the agent of the department and his clerks suitable office and desk room, at the place of manufacture, for the transaction of the business of his agency, without cost to the United States; and to conform in all respects to such regulations as the department or its agent may from time to time adopt for the security of the Government.
“ And the said party of the first part agrees to pay the said party of the second part for the stamps delivered in pursuance of this agreement at the rate of fourteen cents and ninety-nine one-hundredths of a cent (14^0-) for each one thousand (1,000) stamps, which shall be full compensation for everything required to be done or furnished under this contract. Payments to be made quarterly; that is to say, in July, October, January, and April, after a proper examination and verification of the accounts.
u It is further mutually agreed by and between the contracting parties as follows:
“ 1st. That an agent of the department shall have supervision of the manufacture, storage, and issue of the stamps, who shall at all times have full and free access to the apartments, safes, and vaults where the stamps are manufactured and stored, for the purpose of inspecting the same, and whose duty it will be to require the stipulations of the contract to be faithfully observed.”'
# * * * * * *
In 1874, after Congress had required the Postmaster-General “ to cause to be prepared a special stamp or stamped envelope to be used only for official mail-matter for each Executive Department,” the same parties contracted in writing for the manufacture and delivery of official postage-stamps. This contract was to expire at the same time with the former contract. The claimants’ engagements and the mutual engagements were identical with those which we have extracted from the first contract, except that they related to official stamps only. The defendants’ engagement ivas identical in form with their engagement under the first contract, except that the compensation was to be at tlie rate of 80 cents for each 1,000 stamps.
Later in 1874 the same parties made a third contract orally, by which the claimants agreed to deliver to the defendants all the newspaper and periodical stamps that should be required *77 by the Post-Office Department, and tbe defendants agreed to pay for tbe same at tbe rate of $1 a thousand. This contract bad no fixed term; it was practically treated as expiring with the'others, on tbe 30th April, 1877.
On tbe 24th day of April, 1877, the sanie parties entered into a fourth contract, the material parts of which are as follows:
“The parties of the second part do hereby jointly and severally undertake, covenant, and agree with the United States of America, and do bind themselves in manner following, to wit: 1st. To furnish and deliver all the adhesive postage-stamps which may be required by the Post-Office Department for a term of four years, commencing on tbe first day of May, one thousand eight hundred and seventy-seven, of the following descriptions, to wit: 1. Stamps for the use of the public; 2. Official stamps for the use of the Executive Departments; 3. Newspaper and periodical stamps.
“And the said party of the first part contracts and agrees to pay the said Continental Bank-Note Company, party of the second part, for the stamps manufactured and delivered in pursuance of this agreement, at the following rates; that is to say, for stamps for the use of the public, nine cents and ninety-eight one-hundredths of a cent for each one thousand; for official stamps for the use of the several Executive Departments, eleven cents for each one thousand; for newspaper and periodical stamps, fifteen cents and ninety-eight one-hundredths of a cent for each one thousand.”
Thus it appears that the subject-matter of the first contract was ordinary letter-stamps; of the second, official stamps; and of the third, newspaper and periodical stamps; and that the term of each expired with the 30th April, 1877; and that the subject-matter of the new contract was all these kinds of stamps, and that its term began May 1, 1877.
At the close of the 30th April, 1877, the claimants had on hand 169,493,008 stamps finished and unfinished. The unfinished ones have since been finished, and all have been delivered to the defendants.
The claimants contend that they are entitled to be paid for them at the old rates; the defendants maintain that they are bound to pay for them only at the new rates. The claimants have accepted payment at the new rates without prejudice to their rights. They bring this suit to recover the difference between the rates under the old contracts and those under the new.
The oral contract respecting newspaper and periodical stamps *78 was silen t as to tlie inode of delivery. Assuming, as most favorable for tlie claimants, tliat in these respects it conforms to the other two contracts, the rights and obligations of the parties become identical under the three contracts, and the contracts become practically one, with different rates of compensation for different kinds of stamps. The claimants undertook to deliver the stamps to tlie defendants in sealed packages, as they should be called for by the Post-Office Department, the deliveries to be made either at the post-office in New York or at the Post-Office Department in Washington, as the defendants might elect. The defendants agreed to pay the claimants at the rates named in the contracts, but only for the stamps which should be so delivered. They did not undertake to pay the claimants for undelivered stamps in their stocks on hand. ■ The claimants took the risk of keeping a stock, and fixed a rate for those delivered -which should compensate them for it. The agent of the defendants was put in the place of manufacture for the convenience of both parties. The defendants obtained by it a guarantee that the goods delivered were up to standard, without the necessity of inspecting each parcel as delivered, and also obtained a knowledge of the number of stamps remaining for destruction (or purchase, if the parties could agree) at the termination of the contract. It relieved the claimants from the necessity of superintending an examination of the goods at the place of delivery.
The goods for which this suit is brought, uot having been delivered before the expiration of the term of the old contracts, must be regarded as delivered under the new contract, and to be paid for at the now rates.
The claimant’s petition must be dismissed.